IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PATTI FRAZIER, RICKY L. MARTIN,     :
and DAN BRIDGEMAN, individually     :
and on behalf of others             :
similarly situated,                 :
                                    :
          Plaintiffs,               :
                                    :
     v.                             :  Civil Action No. 03-734-JJF
                                    :
AMERICAN AIRLINES, INC. and TWA     :
AIRLINES, LLC,                      :
                                    :
          Defendants.               :
_____:
BARBARA V. LEVY, individually       :
and on behalf of others             :
similarly situated,                 :
                                    :
          Plaintiffs,               :
                                    :
     v.                             :  Civil Action No. 03-792-JJF
                                    :
AMERICAN AIRLINES, INC. and         :
TWA AIRLINES, LLC,                  :
                                    :
          Defendants.               :

_____

Stephen Gardner, Esquire (admitted pro hac vice without the
requirement of local counsel) of Stephen Gardner, Esquire,
Dallas, Texas.
Attorneys for Plaintiffs.

Frederick L. Cottrell, III, Esquire and Steven J. Fineman,
Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware.
Of Counsel:  Richard A. Rothman, Esquire; Robert S. Berezin,
Esquire; Salvatore A. Romanello, Esquire and Sally K. Christie,
Esquire of WEIL, GOTSHAL & MANGES LLP.

_____

**MEMORANDUM OPINION**

May 25, 2006
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court are Motions For Summary Judgment
(D.I. 117 in Civil Action No. 03-734; D.I. 121 in Civil Action
No. 03-792) filed by Defendants, American Airlines, Inc. and TWA
Airlines LLC (collectively, "American") and Motions For Class
Certification (D.I. 111 in Civil Action No. 03-734; D.I. 88 in
Civil Action No. 03-792) filed by Plaintiffs, Patti Frazier,
Ricky L. Martin, Dan Bridgeman and Barbara Levy.  For the reasons
discussed, the Court will grant Defendants' Motions For Summary
Judgment and deny as moot Plaintiffs' Motions For Class
Certification.

BACKGROUND

**I.   Procedural Background**

   A.   <u>The Action Instituted By Plaintiffs Frazier, Martin and
        Bridgeman</u>

In September 2001, Plaintiffs Frazier and Martin commenced
an action against American in the United States District Court
for the Northern District of Texas (the "Texas Court") asserting
claims for breach of contract, fraud, and ERISA violations and
seeking injunctive relief to require American to honor travel
privileges that had been provided to Plaintiffs Frazier and
Martin pursuant to "early out" provisions contained in their
collective bargaining agreements.  D.I. 120, Ex. 2 (Texas

Complaint).[1]  On September 15, 2002, the Texas Court ordered the case to be transferred to this Court, because the United States Bankruptcy Court for the District of Delaware had presided over TWA's bankruptcy case.  Id., Ex. 3 (Texas Order).  Plaintiffs Frazier and Martin then voluntarily dismissed their Complaint on October 30, 2002.

Plaintiffs Frazier and Martin were then joined by Plaintiff Bridgeman, and all three filed the same action that was previously dismissed in Texas in the United States District Court for the Northern District of California (the "California Court"). The California Court also transferred the case to this Court adopting the same reasoning as the Texas Court and concluding that the Texas Court's transfer order had collateral estoppel effect.  Id., Ex. 4 (California Order).

Plaintiffs' Complaint was entered on the Court's docket on July 22, 2003.  Defendants then filed a motion to dismiss, which the Court denied with leave to renew.  Upon renewal, the Court dismissed Plaintiffs' claims for tortious interference and violations of ERISA.  The Court then allowed Plaintiffs to proceed on their breach of contract claim to the extent that

---

[1]      The primary appendices in this case are D.I. 120 in Civil Action No. 03-734-JJF, and D.I. 99 in Civil Action No. 03-792-JJF.  The Court will refer to these appendices throughout this Memorandum Opinion by reference to their docket item number, and not by reference to the case number in which the document is located.

Plaintiffs could show a contract independent of the TWA bankruptcy.[2]

The parties then conducted discovery.  Defendants' Motion For Summary Judgment (D.I. 117 in Civil Action No. 03-734-JJF) followed.

B.    The Action Instituted By Plaintiff Levy

Plaintiff Barbara Levy filed an action similar to that filed by Plaintiffs Frazier, Martin and Bridgeman in the United States District Court for the District of Arizona.  D.I. 1 in Civil Action No. 03-792-JJF.  The Arizona Court concluded that Plaintiff Levy's claims implicated the Sale Order entered by the Delaware Bankruptcy Court, and ordered the action transferred to this Court.  D.I. 22 in Civil Action No. 03-792-JJF.

Plaintiff Levy's Complaint was entered on the Court's docket on August 8, 2003.  Plaintiff Levy's action continued in tandem with the action instituted by Frazier, Martin and Bridgeman, with the Court issuing the same rulings on Defendants' motion to dismiss, and Defendants filing the instant Motion For Summary Judgment (D.I. 121 in Civil Action No. 03-792) after the close of

---

[2]      Plaintiffs have also confirmed in numerous filings that their claims should be considered only to the extent that they assert a contract independent of the bankruptcy proceedings.  See D.I. 69 in Civil Action No. 03-734; D.I. 48 in Civil Action No. 03-792 ("Plaintiffs admit the obvious--none of the parties to this case can relitigate the sale and transfer of assets approved by the bankruptcy court.  Plaintiffs wish to litigate an entirely different claim -- that American Airlines made independent promises about retirement benefits . . . .").

discovery.

## II.  Factual Background

### A.   Plaintiffs' Resignation From TWA

Plaintiffs Frazier, Martin and Bridgeman were employees of Trans World Airlines ("TWA") who left their employment, prior to the filing of TWA's third bankruptcy, pursuant to "early out" provisions contained in their collective bargaining agreements ("CBAs").  D.I. 120, Ex. 9 (Carty Dep.) at 111:2-17, 113:21-114:25, 132:2-13, Ex. 13 (Campanaro Dep.) at 157:7-16, Ex. 8 (Compton Dep.) at 73:18-74:6, Ex. 14 (Gleason Dep.) at 25:18-25, 41:14-20.  Under the "early out" provisions, Plaintiffs were entitled to leave TWA prior to reaching the age of 50, in exchange for free space available travel privileges on TWA and reduced rate travel on other airlines.  Id., Ex. 12 (IFFA CBA, Article 7(F)), Ex. 6 (Frazier Dep.) at 43:11-44:7.  TWA's offer of travel privileges was in writing and described who was eligible for the offer in terms of age requirements plus years of service and the type of travel passes that would be provided on TWA and other airlines.[3]  Id., Ex. 12 (IFFA CBA, Articles 7(E) and 7(F)).  Although Plaintiffs received travel privileges from TWA, they did not receive retiree medical or other benefits, because they did not satisfy the criteria for retirement set

---

[3]    Under the early out provisions of the CBAs, travel privileges were extended to those employees between the ages of 45 and 49 with 15 or more years of service.

forth in TWA's Management Policy and Procedure Manual ("MP&P").
Plaintiffs Frazier, Martin and Bridgeman were not classified as
"retirees" in TWA's computer database, but as "having resigned
with notice."  Id., Ex. 16 (TWA Employee Information Update), Ex.
14 (Gleason Dep.) at 78:3-17, 79:8-18, 97:15-101:19.

Plaintiff Levy also left her employment with TWA prior to
TWA's bankruptcy.  Plaintiff Levy resigned from TWA prior to
reaching the age of 50 pursuant to an Early Retirement Incentive
Program.  D.I. 99, Ex. 4 (Compton Dep.) at 73:18-74:6, Ex. 8
(Gleason Dep.) at 25:18-25, 41:11-20.  Plaintiff Levy was
considered by TWA and American to be an "early out" under this
program.  Id., Ex. 3 (Carty Dep.) at 111:2-17, 113:21-114:25,
132:2-13, Ex. 4 (Compton Dep.) at 73:18-74:6, Ex. 8 (Gleason
Dep.) at 25:18-25, 41:11-20.  In exchange for giving up her job,
Plaintiff Levy received certain post-employment travel
privileges, the precise contours of which were dictated in
writing.[4]  Id., Ex. 5 (Early Retirement Incentive Program) at
AA/TWA-100204, ¶ 1, 2.  Like Plaintiffs Frazier, Martin and
Bridgeman, Plaintiff Levy did not receive medical or dental
benefits, because she did not officially retire and reach the age
of 50.  Id. at AATWA-000012, ¶ 9.  Plaintiff Levy was not

---

[4]     Travel privileges under the Early Retirement Incentive
Program were available to employees age 45 to 49 with 15 or more
years of service and defined as Class 7R lifetime term passes on
TWA airlines, and travel rights on other airlines as designated
in TWA's contracts with those airlines.

classified in TWA's computer database as a "retiree," but as having "resigned with notice." Id., Ex. 7 (Plaintiff's TWA Employee Information Update), Ex. 8 (Gleason Dep.) at 78:3-17, 79:8-18, 97:15-101:19, Ex. 6 (Levy Dep.) at 101:9-102:24.

B.   The Negotiations And Agreements Between TWA And American

After Plaintiffs resigned, TWA filed for bankruptcy.  To avoid a piecemeal liquidation, TWA subsequently entered into an asset purchase agreement (the "APA") with American Airlines ("American"). In re Trans World Airlines, 2001 WL 1820326, *2 (Bankr. D. Del. Apr. 2, 2001).  The APA did not provide for American to assume TWA's obligations to provide travel privileges to TWA retirees, and the APA expressly provided that TWA retained "all obligations or liabilities of [TWA] to provide air travel or related services pursuant to any flight travel privileges, awards or certificates or any similar agreements, arrangements or understandings, whether written or oral)" other than those relating to passengers denied boarding or affected by over booking.  D.I. 120, Ex. 10 (APA) at § 3.2(h), Ex. 9 (Carty Dep.) at 133:23-134:6), Ex. 8 (Compton Dep.) at 77:22-25.  Moreover, the negotiations related to the APA did not concern retiree travel privileges and focused only on the provision of health benefits to retirees.  Id., Ex. 8 (Compton Dep.) 78:1-4, 78:13-16, 82:13-83:1; Ex. 9 (Carty Dep.) at 49:7-23, 104:10-14.  In addition, the CBAs containing those obligations were rejected in

6

TWA's bankruptcy proceeding pursuant to an Order issued by the
Bankruptcy Court.

Apart from the APA, American made a decision in January 2001
to extend travel benefits to eligible retirees.  The details of
those benefits were not defined, and TWA was not aware of
American's decision until Donald Carty, American's then CEO,
responded to Senator McCain at the Senate Subcommittee hearing.

C.   American's Public Statements About Travel Benefits

On February 1, 2001, William Compton, TWA's then CEO, and
Donald Carty appeared before a Senate subcommittee hearing
chaired by Senator John McCain.  Responding to numerous calls
from retired TWA employees to his office, Senator McCain asked
Mr. Carty, "What is the status of the lifetime Term pass, plus-65
medical coverage for retired TWA employees, and the life
insurance policy provided by TWA in your negotiations with
American Airlines?"  Mr. Carty responded, "We intend to offer
retirees pass privileges, Mr. Senator."  D.I. 99, Ex. 25 (2/1/01
Subcommittee Testimony).  Mr. Compton testified that this was the
first time he knew that American was going to extend travel
privileges to retirees.  At all relevant times, both American and
TWA understood the term "retirees" to be defined in accordance
with TWA's MP&P.  D.I. 120, Ex. 9 (Carty Dep.) at 54:18-23,
108:16-25, 111:2-5, 113:21-114:12, 128:12-22, Ex. 8 (Compton
Dep.) at 72:3-74:6, 79:6-12.

7

The day after the hearing, Mr. Carty wrote a letter to Mr. Compton in which he stated:

> I am very pleased to let you know that we have made the decision to extend travel privileges on American to TWA retirees, their spouses, and dependent children.  We have yet to formalize a complete TWA retiree travel program and will share more details on this as we move down the road. . . . I hope you will share this information broadly with your employees and retirees.

Id., Ex. 21 (February 1, 2002 letter).  Mr. Compton then forwarded the letter to TWA employees and retirees.

Approximately one month later, American posted a notice on its website about retiree travel.  The posting stated as follows:

**Q:  Will TWA employees and retirees continue to receive travel privileges?**

American is committed to providing travel privileges to eligible employees and retirees of TWA.  While the details of these privileges have not yet been determined, American will grant travel privileges under the most equitable terms possible.

**Q:  Why is American not accepting some of TWA's special travel arrangements?**

TWA has numerous lifetime travel arrangements with various employee groups that were granted as part of "early out" or other exit programs which are not consistent with American's travel policies.  To be fair and consistent with our policies, our bid for TWA's assets declines to continue these special arrangements, until we are able to review the details and address each of these special groups individually.

8

> **Q:    Will any of TWA's former employees who received special "exit packages" receive travel after the deal is closed?**

> American must review the details of each of these special arrangements before we can determine the ultimate outcome.

D.I. 99, Ex. 11 (Website posting) (bolded emphasis in original, underlined emphasis added).  Plaintiff Levy testified that she was aware of this website posting and that she understood that a decision would be forthcoming regarding whether she would receive travel privileges.  <u>Id.</u>, Ex. 6 (Levy Dep.) at 137:17-138:2, 174:17-175:4.

Shortly after this website posting, on March 20, 2001, American's Executive Committee approved a travel program for eligible TWA retirees.  <u>Id.</u>, Ex. 12 (Executive Committee Presentation), Ex. 3 (Carty Dep.) at 120:7-121:21, Ex. 13 (Marlett Dep.) at 37:1-13, Ex. 15 (Landers Dep.) at 23:1-24:24. Under the program, American used the MP&P formulation of retiree that TWA had used.  <u>Id.</u>, Ex. 3 (Carty Dep.) at 54:18-23, 108:16-25, 111:2-5, 113:21-114:12, 128:12-22, Ex. 4 (Compton Dep.) at 72:3-74:6, 79:6-12, Ex. 13 (Marlett Dep.) at 14:16-15:6, Ex. 2 (Campanaro Dep.) at 167:11-17.

D.    <u>Plaintiffs Frazier, Martin and Levy Are Informed Of American's Decision To Decline To Offer Travel Benefits</u>

On April 6, 2001, letters were sent to Plaintiffs Frazier, Martin and Bridgeman from Tony Campanaro, American's Manager-

9

Employee Travel, informing them that while American agreed to
offer retirement benefits to "those individuals who have retired
from TWA Inc. under the provisions of the standard retirement
understandings," those individuals like Plaintiffs who received
"specialized severance" or "early out" packages would not receive
those benefits.  D.I. 99, Ex. 21.  Plaintiff Levy, however, did
not receive this letter.

    E.    <u>Plaintiff Levy's Communications With American And/Or
        TWA</u>

On March 23, 2001, Plaintiff Levy sent an e-mail to Bob
Baker, American's vice-president, indicating that she took early
retirement and inquiring about the "rumor" that "American is only
considering pass privileges for TWA retirees who were age 50 when
they retired" and explaining that she was one month short of her
50th birthday when she left TWA.  <u>Id.</u>, Ex. 18 (Levy e-mail to
Baker).  Mr. Baker replied to Plaintiff Levy that American would
be "using TWA's definition of a retiree at least 50 years of age
and 15 years of service."  <u>Id.</u>  Mr. Baker also indicated that
American would be relying on TWA's records to determine if she
was a "legite [sic] retiree or an early termination employee."
<u>Id.</u>  Plaintiff Levy responded that she was considered an "early
termination" and asked again if the age requirement would be the
same.  <u>Id.</u>  Mr. Baker reiterated that "[y]ou must meet TWA's
definition of a retiree."  <u>Id.</u>  Plaintiff Levy confirmed her
understanding that American was using the MP&P definition of

10

retiree in her letters sent to Mr. Baker and Mr. Compton.  Id.,
Ex. 19 (Levy letter to Baker), Ex. 20 (Levy letter to Compton).

     In April 2001, Mr. Campanaro telephoned Plaintiff Levy and
left her a message stating that her travel privileges were not
going to be taken away.  Id., Ex. 6 (Levy Dep.) at 206:10-16.
Mr. Campanaro testified that his call was made with the hope that
Plaintiff Levy and others would "fall through the cracks" because
they held the same type of travel passes as thousands of other
retirees who met the MP&P standard for retirement.  Id., Ex. 2
(Campanaro Dep.) at 66:2-17, 149:14-24, 168:2-25.  Plaintiff Levy
admitted that Mr. Campanaro never told her that she satisfied the
retirement criteria that American was using to determine
eligibility for its travel program.  Id., Ex. 6 (Levy Dep.) at
208:14-20, 209:3-6.

     Plaintiff Levy then received a letter dated July 27, 2001
from American stating that "[i]f you are currently eligible for
TWA retiree travel privileges, you will continue to receive
unlimited travel privileges . . ."  Id., Ex. 10.  The travel
privileges for eligible employees were described on the back of
the letter.  Plaintiff testified that, although she received this
letter, she did not feel completely comfortable that she had
secured travel privileges, and she stated that she was "awaiting
something from American."  Id., Ex. 6 (Levy Dep.) at 210:18-
211:19.  Plaintiff admitted that she did not receive her travel

card and full packet of information, and for this reason, she

became very concerned about her travel privileges.  Id. at 215:4-

23, 216:8-219:1.

Plaintiff Levy then sent another letter to Mr. Baker on

August 25, 2001, stating "I understand that American is in the

process of evaluating the pass situation for TWA retirees who had

long tenure with the company but had not yet attained age 50."

Id., Ex. 22.  Plaintiff Levy testified that she understood that

American was evaluating the retiree travel programs from April

through August and that she became increasingly concerned about

whether her travel privileges would be honored as time passed.

Id., Ex. 6 (Levy Dep.) at 218:4-219:1.

> F.   Plaintiff Levy Is Informed That She Is Not Entitled To
>      Retirement Privileges

Over a period of several months, TWA's employment data was

entered into American's system.  At this time, a spreadsheet was

created listing former TWA employees whose eligibility for travel

privileges was questionable.  American reviewed each employee on

this list to verify whether he or she qualified for travel

benefits under the program announced by American.  Id., Ex. 8

(Gleason Dep.) at 41:11-13.  Plaintiff Levy and others in her

situation received a letter dated November 12, 2001, stating:

> Among the liabilities specifically excluded by the
> Court-approved purchase agreement were any and all
> contracts, arrangements, plans, understandings and
> awards relating to flight privileges.  American did,
> however, agree outside of the purchase agreement to

provide travel privileges to individuals who had
retired, as of the purchase date, under TWA Inc.'s
normal retirement programs (years of service and age).
<u>Because you did not retire under these normal
retirement programs, the travel privilege that has been
provided to you and any of your family members will no
longer be available.</u>

<u>Id.</u>, Ex. 24 (emphasis added).

## STANDARD OF REVIEW

In pertinent part, Rule 56(c) of the Federal Rules of Civil
Procedure provides that a party is entitled to summary judgment
if a court determines from its examination of "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any," that there are no genuine
issues of material fact and that the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(c).   In
determining whether there is a triable dispute of material fact,
a court must review all of the evidence and construe all
inferences in the light most favorable to the non-moving party.
<u>Valhal Corp. v. Sullivan Assocs., Inc.</u>, 44 F.3d 195, 200 (3d Cir.
1995).  However, a court should not make credibility
determinations or weigh the evidence.  <u>Reeves v. Sanderson
Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).  To properly
consider all of the evidence without making credibility
determinations or weighing the evidence, a "court should give
credence to the evidence favoring the [non-movant] as well as
that 'evidence supporting the moving party that is uncontradicted

13

and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

To defeat a motion for summary judgment, the non-moving party must:

> do more than simply show that there is some
> metaphysical doubt as to the material facts. . . .  In
> the language of the Rule, the non-moving party must
> come forward with "specific facts showing that there is
> a genuine issue for trial."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted.  Id.

The Court has determined that no genuine issues of material fact exist and that the parties' dispute presents questions appropriate for resolution by the Court as a matter of law. Accordingly, the Court will proceed to address the parties' arguments.

## DISCUSSION

By their Complaints, Plaintiffs contend that American entered into a contract wholly independent of the TWA bankruptcy

14

to provide former employees who left TWA through "early out" or special incentive programs with travel privileges.  In support of their claims, Plaintiffs direct the Court to the conduct of certain American executives in 2001, both before and after American took over the operations of TWA including (1) statements made by Mr. Carty during the Senate subcommittee hearing on February 1, 2001; (2) a February 2, 2001 letter from Mr. Carty to TWA's Mr. Comptom; and (3) representations on American's website. Defendants have moved for summary judgment contending, as a threshold matter, that American's statements and conduct do not constitute a contractual offer to Plaintiffs.  Defendants also contend that Plaintiffs cannot demonstrate acceptance, consideration or a meeting of the minds, and therefore, a valid and enforceable contract between Plaintiffs and Defendants cannot be proven as a matter of law.  Defendants also contend that Plaintiffs are not third-party beneficiaries to any contract between American and TWA's Unions and that Plaintiffs did not qualify for travel privileges under the terms of American's travel program.

I.    **Whether Defendants Are Entitled To Summary Judgment On Plaintiffs' Breach Of Contract Claims Based On The Theory Of A Direct Contract Between The Negotiating Parties Or A General Type Of Advertisement Released To The Relevant Parties**

To sustain a claim for breach of contract, the plaintiff must first establish the existence of a valid contract.  A valid

contract requires (1) an offer, (2) acceptance, and (3) consideration. <u>Salisbury v. Credit Serv., Inc.</u>, 199 A. 674, 681 (Del. Super. 1937). Where, as here, Plaintiffs seek the remedy of specific performance, the existence and terms of a valid, enforceable contract must be proven by clear and convincing evidence. <u>Certainteed Corp. v. Celotex Corp.</u>, 2005 WL 217032, *6 n. 29 (Del. Ch. Jan. 24, 2005).

     A.   <u>Whether Plaintiffs Have Failed To Demonstrate A Valid<br>Contractual Offer, As A Matter Of Law, Such That<br>Defendants Are Entitled To Summary Judgment</u>

"[A]n offer, or a proposal, as it is sometimes called, means the signification by one person to another of his willingness to enter into a contract with him on the terms specified in the offer." <u>Id.</u> Whether a general advertisement in a newspaper or circular sent to all interested persons constitutes an offer depends upon the language used in the advertisement. <u>Id.</u> at 682. If the advertisement "shows an intent to assume legal liability thereby, such an offer may on acceptance form a contract." <u>Id.</u> In contrast, a statement indicating a willingness to enter into negotiations with another person is not an offer. <u>Id.</u> at 681. Similarly, statements of future intention or statements that leave undefined the nature and extent of the performance required are not considered valid offers upon which to base the formation of a binding contract.

Based on the undisputed evidence in this case, the Court concludes, as a matter of law, that American did not make a valid offer to Plaintiffs.  As a threshold matter, the Court notes that American did not negotiate with Plaintiffs to provide them travel privileges, and Plaintiffs have no personal knowledge concerning the negotiations or the formation of a contract.  D.I. 120, Ex. 1 (Plaintiffs' Rog. Response) at No. 2, Ex. 6 (Frazier Dep.) at 41:7-24, 98:6-9, Ex. 7 (Martin Dep.) at 104:18-106:10, Ex. 5 (Bridgeman Dep.) at 125:12-23, 127:1-19.  Plaintiffs contend that Mr. Carty and Mr. Compton were involved in the negotiation and formation of the alleged agreement; however, both Mr. Carty and Mr. Compton testified that American did not agree to provide "early out" employees with travel benefits.  Id., Ex. 8 (Compton Dep.) at 75:12-15, 77:22-78:20, 83:7-10, Ex. 9 (Carty Dep.) at 130:7-11.  Moreover, Plaintiffs Frazier, Martin and Bridgeman were never directly told by anyone from American that they would be provided with travel privileges.  Id., Ex. 6 (Frazier Dep.) at 45:17-46:7, Ex. 7 (Martin Dep.) at 71:15-22, 88:13-89, 90:4-22, 97:4-9, Ex. 5 (Bridgeman Dep.) at 85:1-4, 120:14-21.  Because there was no meeting of the minds between the negotiating parties regarding the extension of travel benefits to employees like Plaintiffs and because Plaintiffs Frazier, Martin and Bridgeman had no direct contacts with American vis-à-vis any offer of benefits, the Court concludes that Plaintiffs cannot establish

the existence of a direct contract between either themselves and American or between TWA and American.[5]

Apart from a direct contract theory between two negotiating parties, Plaintiffs also rely on the concept of the creation of a contract by means of a general advertisement to the relevant parties.  Specifically, Plaintiffs contend that statements made by American executives during the Senate Subcommittee hearing concerning the acquisition of TWA by American constitute a contractual offer.  After reviewing the language used by Mr. Carty on behalf of American and the unrebutted evidence concerning the understanding of American's Mr. Carty and TWA's Mr. Compton, the Court disagrees with Plaintiffs' contention. During his Senate Subcommittee testimony, Mr. Carty stated, "We intend to offer retirees pass privileges, Mr. Senator."  D.I. 99, Ex. 25 (2/1/01 Subcommittee Testimony) (emphasis added).  In the Court's view, Mr. Carty's statement is, at most, a statement of future intent, and therefore, it is insufficient to constitute a binding contractual offer.  See e.g., Koshatka v. Philadelphia Newspapers, Inc., 762 F.2d 329, 337 (3d Cir. 1985) ("[M]ere oral promises stating a future intention to make a contract are not

---

[5]    Plaintiff Levy contends that she received a personal assurance regarding her travel benefits.  The Court will separately address whether Plaintiff Levy's contact with American was sufficient to constitute a direct contract between herself and American; however, Plaintiff Levy cannot establish a direct contract between American and TWA for the same reasons that apply to Plaintiffs Frazier, Martin and Bridgeman.

binding."); <u>Beverage Distribs., Inc. v. Olympia Brewing Co.</u>, 440 F.2d 21, 29 (9th Cir. 1971) (holding that "[a] gratuitous and unsolicited statement of policy or of intention which receives the concurrence of the party to whom it is addressed, does not constitute a contract" and "a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer.")

Plaintiffs also direct the Court to the February letters sent from Mr. Carty to Mr. Compton and Mr. Compton to TWA employees and retirees; however, the Court likewise concludes that these letters are insufficient to constitute binding contractual offers.  In his February 2, 2001 letter, Mr. Carty stated to Mr. Compton,

> I am very pleased to let you know that we have made the decision to extend travel privileges on American to TWA retirees, their spouses and dependent children.  <u>We have yet to formalize a complete TWA retiree travel program and will share more details on this as we move down the road.</u>  However, I know this has become an issue of concern to your retiree group, and I wanted to take this opportunity to reassure them.
>
> I hope you will share this information broadly with your employees.

D.I. 99, Ex. 28 at 100029 (emphasis added).  Although Plaintiffs seize on the language of the letter indicating that American has reached a decision to extend travel privileges to retirees, the

remaining portion of the letter demonstrates that the statement is at most a statement of future intent, because it contains no material terms, and in fact, expressly states that no material terms have been decided upon by American.  See Channel Home Ctrs. v. Grossman, 795 F.2d 291, 298-299 (3d Cir. 1986) (requiring material terms to be sufficiently definite for agreement to be binding); Hindes v. Wilmington Poetry Society, 138 A.2d 501, 503 (Del. Ch. 1958) ("Clearly, material provisions of an agreement can be so indefinite that the agreement will not be enforced."). That Mr. Carty's letter was a statement of future intention that lacks the material terms required for a valid offer is further supported by the February 2 letter from Mr. Compton to TWA employee and retirees which accompanied the transmission of Mr. Carty's letter.  Specifically, Mr. Compton states, "Don Carty advised me this week that American does intend to offer travel benefits to TWA retirees, their spouses and their dependent children."  Mr. Compton goes on to reiterate that no material terms have been settled upon by American stating, "The rules of this program will be finalized as we move forward."

That these letters are properly construed as statements of intention to make a future offer is also supported by the undisputed testimony of the senders of those letters.  Indeed, neither Mr. Carty nor Mr. Compton viewed the February letters as contractual offers to provide travel privileges to former

20

employees like Plaintiffs.[6]  D.I. 120, Ex. 9 (Carty Dep.) at
111:14-17, 114:13-25, 120:1-6, Ex. 8 (Compton Dep.) at 78:5-16,
83:7-10.

That American's "promise" to offer retiree travel benefits
is an "illusory offer" is further demonstrated by a comparison
between Mr. Carty's statements and the actual contractual offers
made by TWA to its retirees.  TWA's travel offers included such
material terms as (1) what an employee had to do to get lifetime
travel benefits, i.e. give up their job, (2) who was eligible for
travel benefits, and (3) the type of travel benefits that would
be extended, i.e. unlimited or a fixed number of trips.  In
contrast, the February letters and other statements to which
Plaintiffs refer contain no mention of such material terms.  The
Eastern District of New York has previously considered Mr.
Carty's February 2 letter and concluded that no reasonable person
could interpret the letter as evidence of a contract, because it

---

[6]    Plaintiffs contend that there are genuine issues of
material fact concerning whether Plaintiffs were considered
retirees of TWA.  The unrebutted testimony of Mr. Carty and Mr.
Compton demonstrate that American never considered "early out"
and special incentive retirees to be "retirees" within the
meaning of the MP&P, which was the definition American ascribed
to the term "retirees."  Moreover, Plaintiff Levy's
communications with American demonstrate that she knew she was
not considered a "retiree" as that term was being defined by
American.  D.I. 99, Ex. 18  (3/23/01 E-mails).  Further, the
Court is persuaded that any confusion between Plaintiffs and
American concerning the meaning of the term "retiree" underscores
that there was no meeting of the minds between the parties, and
that the alleged offer for travel privileges failed to contain a
material term, namely who was eligible for the alleged offer.

lacks material terms and constitutes a unilateral decision by American, "that it would sometime in the future, make an offer to extend travel privileges to TWA's retirees." <u>Tarowsky v. American Airlines, Inc.</u>, 2002 WL 31956009, *2-3 (E.D.N.Y. Dec. 31, 2002).

In the Court's view, the American website postings to which Plaintiffs refer are no different than the February letters. American's posting contains no details of any program for retiree travel benefits, does not define who the "eligible employees and retirees" would be, and leaves unspecified what the "equitable terms" of such undefined travel privileges would be. American's posting merely reaffirms that it was committed to the future prospect of deciding upon the terms of travel privileges, and therefore, the Court cannot construe American's website posting to be a binding contractual offer. Further, other portions of the website posting expressly undercut Plaintiffs contention that employees who resigned pursuant to "early out" or other incentive packages were offered travel benefits. In fact, the website makes clear that no such offer was extended to these individuals as of March 1, 2001, and that American would be evaluating the details of each of these arrangements before it reached a final decision on travel benefits to these individuals.

In addition to the aforementioned letters and statements, Plaintiff Levy also relies on two separate contacts she had with

22

TWA and American.   Specifically, Plaintiff Levy contends that
Tony Campanaro, the manager of TWA's employee travel program,
left her a phone message assuring her that she was a "retiree"
and that her travel privileges would not be taken away from her.
Plaintiff Levy also points to a July 2001 letter she received
from American which stated that "if you are currently eligible
for TWA retiree travel privileges, you will continue to receive
unlimited travel privileges on American."   D.I. 99, Ex. 10.

     However, the testimony of Plaintiff Levy demonstrates that
she knew from the outset that individuals who took "early out"
and other incentive packages were not considered "retirees" and
that American had not offered travel benefits to individuals who
left TWA by means of these packages.   At her deposition,
Plaintiff Levy admitted that she was aware of American's website
posting in March 2001, well before Mr. Campanaro's call, and that
travel benefits for early out and special package retirees were
under consideration.   Id., Ex. 6 (Levy Dep.) at 137:17-138:2,
210:18-211:19, Ex. 19 (Levy letter to Baker), Ex. 20 (Levy letter
to Compton), Ex. 22 (Levy letter to Baker).   Plaintiff Levy's
knowledge is confirmed by her e-mail correspondence to Mr. Baker
in which she refers to "persistent" rumors that "American is only
considering pass privileges for TWA retirees who were age 50 when
they retired."   Id., Ex. 18  (3/23/01 E-mails).   In response, Mr.
Baker expressly confirmed that American would "be using TWA

definition of retiree" and Mr. Baker proceeded to explain that this definition meant "at least 50 years of age and 15 years of service." Plaintiff Levy then replied that she was "an early termination," and Mr. Baker reiterated that she "must meet TWA's definition of a retiree."

As for Mr. Campanaro's telephone message to Plaintiff Levy, the Court concludes that Mr. Campanaro's call did not constitute a valid offer of travel privileges to Plaintiff Levy by American. First, Mr. Campanaro was not an employee of American Airlines, Inc. when he made the statements in question to Plaintiff Levy, and Plaintiff has not demonstrated that he had the ability to bind American Airlines, Inc.[7] Moreover, Plaintiff Levy testified that she remained uncertain about whether she would receive travel benefits despite the telephone call she received from Mr. Campanaro, which demonstrates that even Plaintiff Levy did not believe she had been extended a firm and valid offer regarding travel privileges. Id., Ex. 1 (Levy Dep.) at 217:17-24. Further, Plaintiff Levy testified that Mr. Campanaro did not tell her that she satisfied TWA's definition of retiree, and Plaintiff Levy knew, from her correspondence with Mr. Baker, that she had to meet that definition to qualify for travel benefits.

---

[7]     Mr. Campanaro was a life-long employee of TWA. At the time he spoke to Plaintiff Levy, he was employed by TWA Airlines LLC, a transition subsidiary created by American to integrate the two companies. Plaintiffs make no argument as to whether Mr. Campanaro had the authority to bind American Airlines, Inc.

24

Similarly, the Court concludes that the July letter from American to Plaintiff Levy is insufficient to create a binding offer.   The letter merely states that "if you are currently eligible for TWA retiree travel privileges, you will continue to receive unlimited travel privileges."   (emphasis added). However, Plaintiff Levy knew from her e-mails with Mr. Baker and from her review of the American website that she was not "currently eligible" for retiree travel privileges.[8]   As such, the Court concludes that the July letter did not constitute an offer to extend retiree travel privileges to Plaintiff Levy.

In sum, the Court concludes that Defendants are entitled to summary judgment on the grounds that no reasonable juror could find, by clear and convincing evidence, that the circumstances of this case demonstrate that either Plaintiffs Frazier, Martin and Bridgeman or Plaintiff Levy were made a valid offer by American for travel privileges.   The vast majority of the statements relied upon by Plaintiffs are statements of future intent which are insufficient, as a matter of law, to form a binding offer.

---

[8]   Plaintiff Levy makes much of the fact that she continued to receive travel privileges for some time after April 6, 2001; however, the Court is not persuaded that this fact is sufficient to overcome summary judgment.   Given Plaintiff Levy's uncertainty regarding the travel privileges and the fact that she knew she did not meet the definition of retiree that was being used by American, the Court is not persuaded that the mistaken extension of her travel privileges is sufficient to constitute an offer or transform the other statements at issue into binding offers.

Moreover, none of the statements identified by Plaintiffs sufficiently define the contours of the alleged "offer," and therefore, the Court concludes that they lack the material terms necessary for the formation of a valid offer and subsequent contract.  Accordingly, the Court concludes, as a matter of law, that Plaintiffs cannot establish that they received a valid offer for travel privileges by American, and therefore, Defendants are entitled to summary judgment on Plaintiffs' breach of contract claims.

     B.    <u>Whether Plaintiffs Have Failed To Demonstrate A Valid Acceptance, Such That Defendants Are Entitled To Summary Judgment</u>

In order to form a contract, the recipient of an offer must communicate his or her acceptance of the offer to the offeror. "An offer can be accepted by the rendering of a performance only if the offer invites such an acceptance."  <u>Restatement (Second) of Contracts</u> § 53(1).

Plaintiffs contend that they manifested an acceptance of the alleged offer for travel benefits made by American because (1) Congress did not oppose the consolidation of TWA into American; (2) the Department of Justice and the TWA unions did not challenge the consolidation; and (3) no retiree group successfully opposed the consolidation.  However, the statements cited by Plaintiffs as constituting the alleged offer do not

specify any means of acceptance, let alone acceptance by the means Plaintiffs suggest, i.e. refraining from opposing the TWA consolidation.  Further, Plaintiffs have admitted that they did not do or refrain from doing anything in response to American's public statements.  D.I. 120, Ex. 6 (Frazier Dep.) 70:8-71:7, Ex. 7 (Martin Dep.) 97:15-98:20, 114:14-17, Ex. 5 (Bridgeman Dep.) at 107:3-110:3; D.I. 99, Ex. 6 (Levy Dep.) at 163:8-164:5. Accordingly, the Court concludes that Plaintiffs cannot establish the acceptance required for the formation of a valid contract as a matter of law.

   C.   Whether Plaintiffs Have Failed To Establish That
        The Alleged Contract Is Supported by Consideration Such
        That Defendants Are Entitled To Summary Judgment

A valid contract "requires good or valuable consideration." Haft v. Dart Group Corp., 841 F. Supp. 549, 573 (D. Del. 1993). "Consideration 'confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise." Channel Home Ctrs. v. Grossman, 795 F.2d 291 (3d Cir. 1986).

Plaintiffs contend that the consideration is "straightforward--American wanted the acquisition to succeed without opposition from government, unions or other retirees.  It got what it wanted." D.I. 134 at7 in Civil Action No. 03-734-

27

JJF; D.I. 112 at 7 in Civil Action No. 03-792-JJF.  However, as
the Court noted in discussing the lack of a valid acceptance,
Plaintiffs admit that they did not act or refrain from acting in
response to American's pubic statements and did not rely on those
statements.  D.I. 120, Ex. 6 (Frazier Dep.) 70:8-71:7, Ex. 7
(Martin Dep.) 97:15-98:13, 114:14-17, Ex. 5 (Bridgeman Dep.) at
107:3-110:3; D.I. 99, Ex. 6 (Levy Dep.) at 163:8-164:5.
Moreover, there is no evidence that American requested Plaintiffs
to refrain from acting in connection with their acquisition of
TWA, and in any event, the consideration Plaintiffs allege is not
independent of TWA's bankruptcy.  Accordingly, the Court
concludes that Plaintiffs cannot demonstrate the existence of
valid consideration, and therefore, Defendants are entitled to
summary judgment on Plaintiffs' breach of contract claims.

## II.    Whether Defendants Are Entitled To Summary Judgment On Plaintiffs' Breach Of Contract Claims Based On A Third-Party Beneficiary Theory

Defendants also contend that Plaintiffs cannot maintain
their breach of contract claims based upon the theory that
Plaintiffs are third-party beneficiaries to a contract between
American and the TWA Unions.  Plaintiffs have not responded to
Defendants' argument, and therefore, it is unclear to the Court
whether Plaintiffs continue to press a third-party beneficiary
theory.  However, the Court has previously concluded that
Plaintiffs cannot demonstrate the existence of a direct contract

28

between American and TWA.  To the extent that Plaintiffs press a third-party beneficiary theory based on a contract between American and the TWA Unions, it appears to the Court that the existence of such a contract is premised, in the first instance, on the same statements Plaintiffs have identified in the context of their earlier contract argument.  Because Plaintiffs cannot establish a valid contract based on these statements, the Court agrees with Defendants that Plaintiffs cannot establish their breach of contract claims through a third-party beneficiary theory of liability.

CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motions For Summary Judgment.  Because summary judgment will be granted in favor of Defendants, the Court will also deny as moot the pending Motions For Class Certification.

An appropriate Order will be entered.